UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| RICHARD A. PETRIG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:07-cv-80-WGH-RLY |
| | ) | |
| JAMES FOLZ, in his individual and official | ) | |
| capacity as Sheriff of Posey County, Indiana, | ) | |
| UNKNOWN SUPERVISORS and OFFICERS | ) | |
| OF POSEY COUNTY SHERIFF'S DEPT. | ) | |
| in their individual and official capacities, and | ) | |
| ANTHONY L. PRESLEY, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**Introduction**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge[1], on Defendant James Folz's Motion for Summary Judgment filed July 23, 2008. (Docket Nos. 35-37). Plaintiff filed a Response on August 22, 2008. (Docket Nos. 40-41). A Reply was filed on September 4, 2008. (Docket No. 45).

**Background**

On May 6, 2006, Plaintiff, Richard Petrig ("Petrig") was arrested for a violation of his probation in Vanderburgh County; he was transferred from

---

[1] In their Case Management Plan filed August 29, 2007, the parties consented to Magistrate Judge jurisdiction in this case. (Docket No. 11). District Judge Richard L. Young entered an Order of Reference on September 4, 2007. (Docket No. 12).

Vanderburgh County to the Posey County Jail to be housed.  (Affidavit of Richard Petrig[2] ("Petrig Aff.") ¶ 2; Affidavit of James Folz ("Folz Aff.") Ex. 1).  Just two weeks after arriving at the Posey County Jail, on May 21, 2005, Petrig was being housed with a second inmate, Anthony Presley ("Presley").  (Deposition of Richard Petrig ("Petrig Dep.") at 35-36).[3]  That day Presley "savagely struck [Petrig] in the back and caused [him] a severe and life-threatening injury."  (Petrig Aff. ¶ 2).

At the time the decision to place Petrig and Presley in a cell together was made, there was no indication that Presley had any propensity toward violence.[4]  (Affidavit of James Folz ("Folz Aff.") ¶¶ 5, 8; Folz Aff. Ex. 1).  Posey County Sherrif James Folz ("Folz") was not personally involved in the decision to place Petrig and Presley together.  (Folz Aff. ¶ 7).

After Petrig was injured, he proceeded to a 30 minute visit with his mother.  (Petrig Dep. at 35).  He alleges that when he was initially struck by Presley, he was hurt, but he did not realize that he was seriously injured; only as his visit with his mother was ending did he fully realize that he had been seriously hurt.  (Petrig Aff. ¶ 3 ).  He attempted to get his mother's attention to inform her that he needed

---

[2] Defendant has moved to Strike Petrig's affidavit.  Having examined the affidavit and Defendant's arguments the Court GRANTS IN PART and DENIES IN PART Defendant's Motion to Strike.  To the extent that Petrig's affidavit purports to opine about the mental state of Posey County jail officials, those portions of the affidavit were not considered by the Court for the purposes of this entry.

[3] It is noteworthy that Petrig had also been a cellmate of Presley when they were both incarcerated a few years earlier. (Petrig Dep. at 33).

[4] Petrig had never been in an altercation with, or threatened by, Presley during the prior incarceration.  (Petrig Dep. at 33). In addition, he had never seen Presley involved in a physical altercation during his time at the Posey County Jail.  ( *Id.* at 36-37).

assistance by pounding on the glass separating them, but she was not alerted. (*Id.*).

At around 1:30 p.m. on May 21, after Petrig had returned from visiting his mother, a jail officer saw Petrig waving a towel at the camera in Petrig's cell, providing notice to a member of the Posey County Jail staff that there was something wrong. The jail officers immediately removed Petrig from his cell after he told them that he had been punched by Presley. Presley denied punching Petrig, and the other inmates refused to give voluntary statements. (Folz Aff. Ex. 1).

Petrig was taken to a holding cell, and staff attempted to contact the staff nurse. After failing to contact the nurse, the staff paged the jail"s physician, Dr. Hendrix. At approximately 2:45 p.m., Dr. Hendrix returned the page and advised that Petrig be observed for any change in his condition. He instructed the staff to call again if such a change in Petrig"s condition were observed. (Folz, Aff. Ex. 1).

Subsequent to this call, Petrig continued to worsen and was begging for help. (Petrig Aff. ¶¶ 4-5). He was told by one of the guards that he was healing, and when he insisted he was seriously injured, the guard told him "I'll determine that." (Petrig Aff. ¶ 5).

At 6:10 p.m., in response to Petrig's complaint of hurting inside, staff attempted to contact Dr. Hendrix, as previously instructed. Dr. Hendrix could not be reached, so a second physician, Dr. Johnson, was contacted by the jail staff. Upon instructions from Dr. Johnson, Petrig was then provided with Tylenol and an ice pack. (Folz, Aff. Ex. 1; Petrig Dep. at 41).

At about this same time, Plaintiff was removed from isolation and taken to Sergeant Farr's ("Farr") office where Farr examined Petrig's back, decided that Petrig's bruise was "going down" and told Petrig "you'll be alright." (Petrig Dep. at 49). Petrig responded by telling Farr that it was not the outside of his back that was hurting but "something on the inside." (*Id.*).

At some point later in the evening, Petrig claims that he realized he was getting nowhere with this particular shift at the Posey County jail and he wanted to air his concerns with a new shift after the shift change. (*See* Petrig Dep. at 41). Petrig claims that late that evening there was a woman on the new shift that he tried to convince that he needed to go to the hospital but that he "went nowhere with that." (*Id.*).

Throughout the evening of May 21, Petrig made constant requests for help. He was instead left to sit on the floor of the drunk tank all night with worsening pain. (Petrig Aff. ¶ 7). The guards provided nothing except ice and Tylenol to Petrig, as they allege was instructed by a doctor. (*Id.* ¶ 7; Defendants' Brief in Support of Motion for Summary Judgment at 2-3).

During this time, Petrig alleges that he was in constant, agonizing pain and was making every possible attempt to get help. (Petrig Aff. ¶ 10). Petrig claims that his distress would have been evident to any reasonable person; as by 12:00 p.m. on May 22 he was literally screaming for help and banging on the cell door. (*Id.* ¶ 7).

Later on May 22, Petrig's cell was approached by a guard named John Wright ("Wright"). (Petrig Aff. ¶ 8). Wright questioned "What are you hollering

-4-

about?"  (*Id.*).  After being told by Petrig that his condition had worsened, Wright informed Petrig that Vanderburgh County officials might need to be contacted to come and get him.  (*Id.*).  Twenty minutes later, Wright was summoned again by Petrig's screaming and banging; finally at approximately 3:52 p.m., Wright noted that Petrig was in severe pain and had poor vitals after taking Petrig's blood pressure.  (Folz Aff. Ex. 1; Petrig Aff. ¶ 9).

After one of the jail officers consulted the Posey County Jail nurse, the Vanderburgh County officials were consulted, and instead of immediately transporting Petrig themselves, Petrig was transported by Vanderburgh County officials[5] to Deaconess Hospital at approximately 5:00 p.m.  (Folz Aff. Ex. 1).  By the time Petrig finally arrived at the hospital, he had lost between eight and ten units of blood and, according to Petrig, was near death.  (Petrig Aff. ¶¶ 10-12).  A CT scan showed a lacerated spleen and Petrig was taken to surgery for removal of his spleen.  (Folz Aff. Ex. 1).  This was the first time in the 27-hour ordeal that Petrig was seen by any physician or nurse.[6]  (*See* Defendants' Brief in Support of Motion for Summary Judgment at 3).

On May 18, 2007, Petrig filed suit in Posey County Circuit Court.  The suit was removed to federal court on June 11, 2007.  Petrig asserted that Defendants

---

[5]While being transferred to the custody of the Vanderburgh County officers, Petrig alleges that he passed out and fell to the ground; as a result, he was instructed by Wright that if he fell again Wright would let him fall and bust his teeth out.  (Petrig Aff. ¶ 11).

[6]From the time Presley punched Petrig on May 21 and Petrig"s transportation to surgery on May 22, he was never given access to any medical professional, and all that jail staff had done was provide Tylenol to Petrig on three occasions.  (Folz Aff. Ex. 1).

are liable under 42 U.S.C. § 1983 for violations of the Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution. Namely, Petrig alleges that Folz as well as unnamed supervisors and officers of the Posey County Sherrif's Department acted with deliberate indifference when they failed to provide medical care to him after he was injured while in the Posey County Jail. (*See* Complaint ¶¶ 4-19).

Defendant, Folz, filed his Motion for Summary Judgment arguing that all claims against the unnamed officers and supervisors must be dismissed because no actual officers have been named, the two-year statute of limitations has expired, and Plaintiff cannot amend his Complaint to now name the officers because any claims in an Amended Complaint would not "relate back" to the original claims. Folz also argues that claims against Folz must be dismissed because there was no deliberate indifference toward Petrig, because Folz cannot be found liable in his individual capacity, and because no custom policy or practice led to Petrig's injuries. Having examined the parties' briefs and the relevant case law, the Court concludes that Folz's motion must be GRANTED IN PART and DENIED IN PART.

## **Summary Judgment Standard**

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The motion should be granted so long as no rational fact finder could return a verdict in favor of the

nonmoving party.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Thus, a court's ruling on a motion for summary judgment is akin to that of a directed verdict, as the question essentially for the court in both is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.  When ruling on the motion, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences therefrom in that party's favor.  *Id.* at 255.  If the nonmoving party bears the burden of proof on an issue at trial, that party "must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e); *see also Silk v. City of Chicago,* 194 F.3d 788, 798 (7th Cir. 1999).  Lastly, the moving party need not positively disprove the nonmovant's case; rather, it may prevail by establishing the lack of evidentiary support for that case.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

## Analysis

1. Petrig has Abandoned His "Individual Capacity" Claims

       Petrig had originally raised claims in his Complaint against unnamed officers and supervisors of the Posey County Sheriff's Department in their individual capacity.  However, in his Response to Defendant's Motion for Summary Judgment Plaintiff indicated that he has chosen to abandon his claims against all the unnamed officers and supervisors in their individual capacity. These claims are DISMISSED.

2. Claims Against Sheriff Folz in his Individual Capacity Must be Dismissed

Plaintiff also raised an "individual capacity" claim against Folz. The Seventh Circuit has noted that " under [42 U.S.C.] § 1983, there is no respondeat superior liability." *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002). A supervisor, such as Folz, must have been "personally involved in the wrongful conduct such that he or she caused or participated in the alleged violation." *Boyce v. Moore*, 314 F.3d 884, 888 (7th Cir. 2002).

Examining the facts surrounding Petrig's circumstances in the light most favorable to him, the Court finds no evidence that Folz was, in any way, personally responsible for Petrig's care after he was attacked by Presley. Plaintiff has pointed to no evidence whatsoever to suggest that Folz was "personally involved in [any] wrongful conduct . . . ." Petrig's claim against Folz in his individual capacity must, therefore, be DISMISSED.

3. Petrig's Official Capacity Claims Survive

Petrig has also raised "official capacity" claims against Folz and other officers and supervisors.

A. Petrig Provided Facts Sufficient to Support a Claim of Deliberate Indifferent

Petrig, in this case, was picked up on a probation violation and was being housed in the Posey County Jail. Consequently, as a prisoner and not simply a pretrial detainee, he must demonstrate that he was deprived of his rights under the Eighth Amendment to the U.S. Constitution in order to sustain his § 1982 claims. The Eighth Amendment prohibits cruel and unusual punishment. U.S. CONST. amend. VIII. In essence, what is prohibited by the Eighth Amendment is the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97,

104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).  Hence, the Eighth Amendment protects prisoners from "deliberate indifference" to serious medical needs including delayed access to medical care.  *Id.* at 104-05.  In order to establish a violation of the Eighth Amendment, Plaintiff must show: 1) that his medical needs were objectively serious; and 2) an official knew of and disregarded an excessive risk to inmate health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  For a medical need to qualify as objectively serious, it must be a need "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001).  And, in satisfying the second prong of the test, Plaintiff must demonstrate culpability on the part of prison officials by showing that the officials were subjectively aware of Petrig's serious medical needs and disregarded an excessive risk that a lack of treatment would pose Petrig's health or safety.  *Id.*

     In Petrig's case he clearly was suffering from a lacerated spleen, as he ended up having his spleen removed.  Viewing the facts in the light most favorable to Petrig, any reasonable person should have recognized that he was in distress.  He had been punched in the back by a fellow inmate.  According to his version of events, he began complaining of serious pain at 1:30 p.m. on May 21 and continued repeatedly and with great effort, even to the extent of screaming out, to complain for over 26 hours until his vital signs were finally taken on May 22 at 3:52 p.m.  The taking of Petrig's vital signs demonstrated that a serious medical condition existed.  A reasonable person could have realized that he had an

objectively serious medical need.

Petrig has also provided facts sufficient to demonstrate the requisite level of culpability. A prisoner is not required to show that he was "literally ignored" in order to show deliberate indifference. *Sherrod v. Lingle,* 223 F.3d 605, 611 (7th Cir. 2000). Yet, that is what the facts, viewed in the light must favorable to Petrig, demonstrate occurred. Petrig has demonstrated that Defendants contacted a doctor at 2:45 p.m. and again at 6:10 p.m. on May 21. Defendants were instructed to re-contact a doctor if Petrig's condition worsened. However, there is no evidence that Petrig's condition was evaluated in any meaningful way or that he was even observed for the following 21 plus hours after 6:10 p.m. on May 21. Instead, he was left in isolation where, arguably, the deterioration of his condition would have been more difficult to have recognized. Petrig has clearly demonstrated facts sufficient to show that officers at the Posey County Jail were deliberately indifferent.

B. A Custom Policy or Practice Could Have Led to Petrig's Alleged Neglect

Normally, once a prisoner has demonstrated deliberate indifference, his claim automatically survives summary judgment. In this instance, however, Petrig's only surviving claims are "official capacity" claims. In order to sustain a claim against a sheriff or other prison official in their official capacity, Petrig must demonstrate that some custom, policy, or practice caused his injury. *Perkins v. Lawson,* 312 F.3d 872, 875 (7th Cir. 2002). As the Seventh Circuit very recently reiterated in *Grieveson v. Anderson,* Plaintiff must point to an express policy, a widespread custom or practice that is well-settled enough to amount to a policy,

or an act by someone with policy-making authority that caused his injury. *Grieveson v. Anderson*, 2008 WL 3823872 at *7 (7th Cir. 2008). The question the Court must answer is whether Petrig has presented enough evidence of a custom or practice to permit an inference that the Posey County has chosen an impermissible way of operating." *Id.* at *8 (citing *Calhoun v. Ramsey*, 408 F.3d 375 (7th Cir. 2005)).

 Here, the Court finds questionable two actions about which the Court concludes Plaintiff has provided enough evidence to survive summary judgment. First, the Court notes that there appears from the facts to have been no medical staff whatsoever available on-site at the Posey County Jail for at least a 28-hour period. There was no evidence submitted to suggest that Petrig was evaluated by any medical staff during this entire ordeal. And, the evidence presented to this date demonstrates that only after 27 hours had passed (at 3:52 p.m. on May 22) were Petrig's vital signs taken. Second, it became crystal clear that Petrig was in need of emergency services by at least 3:52 on May 22 when Wright was instructed to transport Petrig to the hospital. Instead of immediately transporting Petrig, Posey Couty Jail officials waited for Vanderburgh County officials to arrive at 5:00 p.m. to transport Petrig to the hospital. It is possible at trial that medial experts could conclude that this policy or practice of not personally taking inmates immediately to the hospital could have led to additional pain and suffering and could have increased Petrig's risk of harm. Thus, the Court concludes that having no medical staff on-site and available to examine an injured inmate for more than an entire day, and failing to immediately transport an

inmate, who was in obvious distress, to a hospital are suspect practices or policies.

Because the Court concludes that there is substantial evidence of a custom, policy, or practice that contributed to Petrig's injury, and because there are sufficient facts to demonstrate that officers at the Posey County jail were deliberately indifferent, Petrig's "official capacity" claims survive Defendant's Motion for Summary Judgment.

## Conclusion

For the reasons outlined above, Defendant's Motion for Summary Judgment is **GRANTED IN PART and DENIED IN PART.** Plaintiff's individual capacity claims against all individuals are **DISMISSED.** All official capacity claims remain for trial.

**SO ORDERED.**

Dated:  September 10, 2008

_____
WILLIAM G. HUSSMANN, JR.
Magistrate Judge

**Electronic copies to:**

Jeremy Michael Dilts
CARSON BOXBERGER
dilts@carsonboxberger.com

Edward J. Liptak
CARSON BOXBERGER
liptak@carsonboxberger.com

William DeWitt Nesmith
DUNLAP & NESMITH LLP
wnesmith@courtbuilding.com

W. Trent Van Haaften
BAMBERGER FOREMAN OSWALD & HAHN LLP
tvanhaaften@bamberger.com